NOT FOR PUBLICATION (Docket No. 15)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MICHELLE FERGUSON, | |
| Plaintiff, | |
| v. | Civil No. 06-2112 (RBK) |
| | **OPINION** |
| DEPTFORD TOWNSHIP, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

Before the Court is a motion by Defendants Deptford Township, et al. ("Defendants") for summary judgment on the Complaint of Plaintiff Michelle Ferguson ("Plaintiff"). The Complaint alleges that, during the course of Plaintiff's employment, Defendants harassed and retaliated against her, in violation of 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq., after she complained about an incident of sexual harassment by a co-employee. For the reasons expressed below, the Court will grant Defendants' motion.

**I.   BACKGROUND**

Defendants' motion relates to the harassment and retaliation claims of Plaintiff Michelle Ferguson, a part-time emergency medical technician ("EMT") employed by Deptford Township, New Jersey, Emergency Management Services ("EMS") and a volunteer firefighter employed by the Deptford Fire District. Plaintiff complained to her EMS supervisors after a full-time EMT in

1

Deptford Township who was also a volunteer firefighter in Deptford propositioned Plaintiff on March 18, 2005, offering her money for sex. Plaintiff reported the harassment to her immediate supervisor Defendant Thomas Newman, to a Deptford Police Sergeant, and to Defendant Daniel Murphy who reports to the Deptford Chief of Police. Plaintiff contends that Newman, as well as her other immediate supervisor Defendant Donald Banks, told Plaintiff that her harasser could not be fired and that Plaintiff's shifts would change so that she was not scheduled to work with her harasser. Plaintiff avers that her shifts were reduced after she reported the incident. She represents that she was ostracized and treated poorly by her co-employees and supervisors after her report. Plaintiff also represents that she was denied some minor privileges of employment after her report and generally was treated differently to a point of suffering stress and anxiety.

## II.   DISCUSSION

### A.   STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by

either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 2007 WL 2709661 at *1 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).

### B. ANALYSIS

#### 1. All Defendants' Potential Liability

Defendants argue that they cannot be held liable in this case because they have no duty to supervise, monitor, or investigate the off-duty conduct of employees. "Whether specific acts of harassment or discrimination [take] place outside the workplace . . . is of no consequence because such conduct nevertheless would have arisen out of the employment relationship" and therefore may be actionable against the employer. American Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (N.J. 1998). That harassment occurs away from the workplace "does

not mean that an employer [has] no duty to correct off-site harassment by co-employees." Blakey v. Continental Airlines, Inc., 751 A.2d 538, 549 (N.J. 2000). "Conduct that takes place outside of the workplace has a tendency to permeate the workplace." Id. This Court finds that Defendants may be held liable as the harasser's employer because although the alleged harassment took place outside the workplace, it arose out of the harasser and Plaintiff's employment relationship. To be sure, if the Court is to understand Plaintiff's position as a hostile work environment claim against the Defendants based merely upon their behavior after the alleged harassment, then the Defendants' duty to supervise need not even be the basis for their potential liability.

### 2. Plaintiff's § 1983 Claims

Defendants argue on multiple bases that they are entitled to summary judgment on Plaintiff's claims under 42 U.S.C. § 1983.

The Defendant Township alleges that it is entitled to summary judgment on Plaintiff's claims alleged under 42 U.S.C. § 1983 based upon the fact that a municipality is not always liable in such cases. Under § 1983, a local government entity, such as a township, "cannot be held liable solely because it employs a tortfeasor." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. The Defendant Township contends that Plaintiff has no evidence of such a policy or custom in Deptford Township and that she cannot, as none exists. Plaintiff's responsive submission to the Court does not offer any evidence of a policy or custom that would be

sufficient to meet the Monell standard. Accordingly, the Defendant Township's motion for summary judgment on Plaintiff's § 1983 claims against it will be granted.

Defendants argue that the individual Defendants are entitled to summary judgment on Plaintiff's § 1983 claims because, they contend, Plaintiff has not been deprived of any of the rights set forth in Count One of her Complaint. "To state a claim under [42 U.S.C.] § 1983 , a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Defendants agree for the purposes of the Court's consideration of this motion that the individual Defendants acted under the color of law in their handling of Plaintiff's complaints about the alleged harassment and that the rights at issue in Plaintiff's Count One are secured by the Constitution of the United States. At issue is whether deprivations of Plaintiff's Constitutional rights were committed by the Defendants.

### a. Freedom of Speech and Freedom to Petition for Redress of Grievances

Defendants contend that Plaintiff has not presented any evidence of a deprivation of her First Amendment rights to freedom of speech and to petition for redress of grievances. Defendants aver that, even considering Plaintiff's many allegations against Defendants, Plaintiff cannot point to any instance of a curtailment of either of those of Plaintiff's rights. To establish a violation of her First Amendment right to free speech or right to petition for redress of grievances, Plaintiff must first represent that she engaged in a protected activity. See Kadetsky v. Egg Harbor Tp. Bd. of Educ., 82 F. Supp. 2d 327, 336 (D.N.J. 2000); Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997). Plaintiff also bears the burden to show that the protected

5

activity was a substantial or motivating factor in the alleged retaliatory action.  Id.  In response to Defendants' motion, Plaintiff contends that, "the record amply demonstrates [that] Defendants punished her for voicing her complaint of harassment."  (Pl.'s Br. at 26.)  Plaintiff fails to meet her burden in responding to Defendants' summary judgment motion.  She does not "make a showing sufficient to establish the existence of [every] element essential [of her] case, and on which [she] will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Instead, Plaintiff merely directs the Court to consider the record in the case, a request that is insufficient to survive a summary judgment motion.

### b. Equal Protection

Defendants further contend that Plaintiff cannot establish a prima facie case of an equal protection violation because although she is a member of a protected class, she has failed to present evidence that she was similarly situated to a non-protected person who was treated differently.  Additionally, Defendants allege that there is nothing in the record to support the assertion that Plaintiff has been purposefully discriminated against because of her gender.  To claim a denial of equal protection under 42 U.S.C. § 1983, Plaintiff must demonstrate Defendants' purposeful discrimination against her, that she purposefully "receiv[ed] different treatment from that received by other individuals similarly situated."  Kuhar v. Greensburg-Salem School Dist., 616 F.2d 676, 677 n. 1 (3d Cir. 1980).  "Specifically to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon her gender."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing Bohen v. City of East Chicago, 799 F.2d 1180, 1186-87 (7th Cir. 1986)).  The Court finds that Plaintiff did not respond to Defendants' motion for summary judgment on her equal protection claim.  As

such, Plaintiff failed to meet her burden in responding to Defendants' motion. She does not "make a showing sufficient to establish the existence of [any] element essential to [her] case, and on which [she] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Accordingly, Defendants' motion for summary judgment on Plaintiff's § 1983 claims will be granted.

### 3. Plaintiff's New Jersey LAD Claims

#### a. Hostile Work Environment

Defendant contends that Plaintiff cannot satisfy the evidentiary requirements for a hostile work environment claim under the LAD.

> To state a claim for hostile work environment sexual harassment, a female plaintiff must allege conduct that occurred because of her sex and that a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment. For the purposes of establishing and examining a cause of action, the test can be broken down into four prongs: the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.

Lehmann v. Toys R Us, Inc., 626 A.2d 445, 453 (N.J. 1993). In particular, Defendants aver that when Plaintiff complained about the alleged harassment, Defendants responded to the situation appropriately. Further, Defendants contend that Plaintiff cannot point to a severe or pervasive pattern of harassment, although the original offending act was admittedly severe. Based upon the reasonable person standard articulated in Lehmann, Defendants contend that Plaintiff cannot make out a hostile work environment claim.

In response to Defendants' motion, Plaintiff contends that, "as set forth in the Counter-Statement of Facts, Plaintiff was subjected to a hostile work environment each time she went to

work following the incident [of alleged harassment]." (Pl.'s Br. at 25.) Plaintiff has failed to present evidence sufficient to show that the conduct she complains of was severe or pervasive enough to make a reasonable woman believe that the conditions of employment were altered and that her working environment was hostile or abusive.[1]

Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's hostile work environment claims.

### b. Retaliation

Defendants move for summary judgment on Plaintiff's charge of retaliation, as they argue that she does not have evidence to support such a claim. In support of her claim of retaliation under the LAD, Plaintiff alleges that (1) the number of shifts she worked was reduced from three to four per week to one to two per week; (2) she was ostracized by her co-workers and her supervisors; (3) when she complained of her supervisors' behavior after her complaint of harassment, she was criticized; (4) minor privileges she previously had, e.g. coffee breaks, were taken away; and (5) her alleged harasser was not disciplined. (Pl.'s Br. at 23.)

When analyzing a retaliation claim under the LAD, the Court employs the same three-step burden-shifting analysis that it uses to evaluate a discrimination claim. Marrero v. Camden County Bd. of Social Services, 164 F. Supp. 2d 455, 473 (D.N.J. 2001); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the first step of this framework, the plaintiff must establish a prima facie case of retaliation by showing that: (1) she engaged in protected conduct known to the employer; (2) thereafter the employer took an adverse

---

[1] The Court's analysis is rooted in its own review of the evidence in this case, as Plaintiff has failed to make a specific showing in her brief as to how the evidence satisfies the requirements of the prima facie case, as is required under Celotex and Corliss.

employment action against the plaintiff; and (3) there was a causal link between the protected activity and the adverse employment action.  Shepherd v. Hunterdon Developmental Ctr., 765 A.2d 217, 229-30 (N.J. Super. Ct. App. Div. 2001); Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995).  Once the plaintiff establishes the prima facie elements of retaliation, then the defendant must provide legitimate, non-retaliatory reasons for the employment decision.  Romano, 665 A.2d at 1142.  At that point, the plaintiff has the burden to present evidence of the employer's discriminatory motive to demonstrate that the legitimate reasons articulated by the employer were merely a pretext for discriminatory intent.  Id.

The LAD prohibits employers from taking reprisals or adverse actions against any employee for exercising his or her rights under the statute.  See N.J. Stat. Ann. § 10:5-12(d).  It is undisputed that Plaintiff's filing of a complaint with her supervisors regarding an alleged incident of harassment is a protected activity under the LAD.  See McBride v. Princeton Univ., Civ. No. 90-838, 1991 WL 66758, at *4 (D.N.J.  Apr. 24, 1991).  Therefore, the analysis must focus on the second and third prongs of a prima facie retaliation claim.  However, the LAD does not provide an exhaustive list of what constitutes an actionable reprisal or adverse employment decision.  Although there are no bright line rules defining an adverse employment action, New Jersey courts have noted that it is proper to look "for guidance to federal law dealing with Title VII and Civil Rights legislation to determine what constitutes an adverse employment decision in the context of an LAD retaliation claim."  Mancini v. Twp. of Teaneck, 794 A.2d 185, 207 (N.J. Super. Ct. App. Div. 2002). Some factors for consideration include whether the alleged retaliatory conduct resulted in the employee's "loss of status, clouding of responsibilities, diminution in authority,

disadvantageous transfers or assignments, and toleration of harassment by other employees." Id. (citations omitted).

In the Title VII context, the Third Circuit has found that retaliatory conduct is an adverse employment action "only if it alters the employee's compensation, terms, conditions, or privileges of employment, or deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). However, not every minor employment action that makes an employee "unhappy" constitutes retaliatory conduct. Id. An adverse action for purposes of Title VII refers to a "significant change in employment status, such as hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits." Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (quoting Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749, (1998)).

Using these standards as guidelines, the Court finds that Plaintiff's allegations regarding her supervisors' and co-workers' demeanor, her supervisors' criticisms of her, the revocation of some minor privileges of employment, and the failure to discipline Plaintiff's alleged harasser do not rise to the level of an adverse employment action. Although Plaintiff's supervisors' and co-employees' demeanor towards her may have been impolite, there is no indication that it resulted in a significant change in Plaintiff's employment status. See Weston, 251 F.3d at 431. Allegations of intense scrutiny, overly critical supervision, unnecessary reprimands or derogatory comments do not constitute an adverse employment action. Buffa v. New Jersey State Dep't of Judiciary, 56 F. App'x 571, 576 (3d Cir. 2003); Robinson, 120 F.3d at 1301 (noting that "unsubstantiated oral reprimands" and "unnecessary derogatory comments" do not

10

rise to the level of an adverse employment action required for a retaliation claim). Likewise, accusations of occasionally being ignored by a supervisor are insufficient to constitute an adverse employment action, absent any indication that such silence affected the employee's job status. Magilton v. Tocco, 379 F. Supp. 2d 495, 507 (S.D.N.Y. 2005) (noting that being ignored does not rise to the level of an adverse employment action because employment laws are not a civility code meant to punish rude behavior). Therefore, that Plaintiff was ostracized by her co-workers and her supervisors, criticized by her supervisors after filing her complaint, had minor privileges revoked, and her alleged harasser was not disciplined do not constitute an adverse employment action necessary to sustain Plaintiff's retaliation claim.

As to Plaintiff's allegation that her shifts were reduced in retaliation for her filing of a complaint, the Court finds that, drawing all justifiable inferences in Plaintiff's favor, the reduction in her shifts constituted an adverse employment action. The Court further finds that Plaintiff has demonstrated a temporal link between her complaint of harassment and reduction in shifts, however she has not demonstrated a causal link. Even if the Court were to find that Plaintiff's showing is sufficient to meet her initial prima facie burden, the Court finds that Defendants have articulated a legitimate, non-discriminatory reason for their action. Defendants represent that Plaintiff's hours were reduced because she submitted requests for fewer shifts after the incident, and that the percentage of shifts to which she was actually assigned did not materially change.

The Court finds that Plaintiff has not met her burden to present evidence of her employer's discriminatory motive, to demonstrate that the legitimate reason articulated by her employer was merely a pretext for discriminatory intent. Having failed to do so, Defendants'

11

motion for summary judgment on Plaintiff's retaliation claim will be granted.

### c. Constructive Discharge

Defendants move for summary judgment on Plaintiff's claim of constructive discharge, arguing that Plaintiff has failed to produce evidence sufficient to sustain the high burden required of a Plaintiff in such a case. Plaintiff's response includes the same bases she offers to support her claim of retaliation.

A claim for constructive discharge may exist where an "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984); Nolan v. Cleland, 686 F.2d 806, 813 (9th Cir. 1982) (permitting constructive discharge claim for continuous pattern of discriminatory treatment over a number of years). To survive summary judgment, the plaintiff must "set forth sufficient facts so that a reasonable jury could conclude that her decision to leave was reasonable based upon the history of discriminatory treatment." Aman, 85 F.3d at 1084. Because the test is objective, the plaintiff must further establish that "'the conduct complained of would have the foreseeable result that . . . a reasonable person in the employee's shoes would resign.'" Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993) (quoting Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir. 1992)).

Plaintiff has failed to present evidence sufficient to show that the conduct she complains of was so intolerable that a reasonable person subject to it would resign. It is also unclear to the Court whether Plaintiff continued working even after professing that the conditions were intolerable. Further, the Court finds no continuous pattern of discriminatory treatment over a number of years, nor that the conduct complained of would have the foreseeable result that a

reasonable person in the employee's shoes would resign.

Accordingly, summary judgment on Plaintiff's constructive discharge claims will be granted.

### 4. Punitive Damages and Individual Defendants' Potential Liability

Because the Court will grant Defendants' motion for summary judgment on Plaintiff's Complaint, two additional issues in Defendants' brief - whether punitive damages are appropriate or not and whether the individual Defendants may be held liable on Plaintiff's claims - are moot and will not be addressed by the Court.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Complaint is **GRANTED**.  The accompanying Order shall issue today.


Dated:  12-22-08                                                   /s/ Robert B. Kugler
                                                                                                                           ROBERT B. KUGLER
                                                                                                                           United States District Judge